**STOLT–NIELSEN, INC., Plaintiff,**

v.

**ZIM ISRAEL NAVIGATION COMPANY, LTD.; M/V Zim Montreal; M/V Pacifico, their engines, boilers, tackle, furniture, apparel, etc., in rem., Defendants.**

**ZIM ISRAEL NAVIGATION COMPANY, LTD., and M/V Zim Montreal, Cross–Claimants,**

v.

**M/V PACIFICO, Cross–Defendant.**

**Civ. A. No. 490–273.**

United States District Court,
S.D. Georgia,
Savannah Division.

June 14, 1994.

---

Theresa Forreser Pindar, Savannah, GA, for plaintiff.

Gustave R. Dubus, III, Richard A. Rominger, Savannah, GA, for defendant.

## ORDER

ALAIMO, District Judge.

On September 28, 1990, Plaintiff, Stolt–Nielsen, Inc. ("Stolt–Nielsen"), instituted this admiralty/maritime action against Defendants, Zim Israel Navigation Company, Ltd. ("Zim Israel"), M/V Zim Montreal ("Zim Montreal"), M/V Pacifico ("Pacifico"), and Resolve Maritime Corporation ("Resolve Maritime"), pursuant to 28 U.S.C. § 1333.[1] The case is presently before the Court on a Motion by Zim Israel and Zim Montreal to

---

1. Resolve Maritime was dismissed without prejudice on March 18, 1991. See below.

Dismiss for Failure to Prosecute, pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 15.1(c). For the reasons discussed herein, said motion will be **GRANTED.**

## FACTS

On October 6, 1986, the M/V Stolt Eagle ("Stolt Eagle"), a ship owned by Stolt–Nielsen, was moored at Georgia Ports Authority, Berth 50 on the Savannah River in Georgia. Two other ships, the Pacifico and the Zim Montreal, were nearby and traveling toward each other. These two other ships apparently came too close to each other, and the Zim Montreal was forced to maneuver to avoid colliding with the Pacifico. The Zim Montreal's bow swung toward the dock, and the hydraulic pressure and suction allegedly caused the Stolt Eagle to break away from its mooring. The Stolt Eagle went aground into the bank of the Savannah River, suffering damages. The Stolt Eagle was repaired by December 1988.

On September 28, 1990, Stolt–Nielsen instituted the present action. The Complaint alleges that the damages sustained by the Stolt Eagle were the result of negligence by Defendants. The respective Answers, in relevant part, deny liability and challenge the extent of damages.

On March 8, 1991, Stolt–Nielsen dismissed Resolve Maritime without prejudice. An Order was entered accordingly on March 18, 1991. The Clerk of Court apparently mistook the dismissal as to Resolve Maritime to be a dismissal of the case generally, and moved the case to storage.

From March 1991 to March 1994, Stolt–Nielsen failed to contact the remaining Defendants or otherwise advance the action. Stolt–Nielsen explains that in that interim, it and its counsel were resolving differences as to what damages could properly be claimed in the action. Moreover, Stolt–Nielsen alleges that it felt that liability was established, with the only remaining issue being the extent of damages. Accordingly, Stolt–Nielsen claims that it did not feel that extensive discovery was necessary in the interim.

On June 3, 1992, Stephen F. Browne ("Browne"), who captained the Zim Montreal on the date of the accident, died after a short illness. None of the parties had deposed Browne.

In March 1994, Stolt–Nielsen contacted the remaining Defendants to discuss settlement. Zim Israel responded that the action had been dismissed. Stolt–Nielsen replied that the action had been dismissed only as to Resolve Maritime. The parties then contacted the Court, and the earlier error by the Clerk's Office was discovered and corrected.

In the present motion, Zim Israel and Zim Montreal contend that the present action should be dismissed for failure to prosecute because: (1) Stolt–Nielsen failed to pursue the action reasonably; and (2) the moving Defendants are severely prejudiced by the death of Browne.

## DISCUSSION

### I. Failure to Prosecute

Federal Rule of Civil Procedure 41(b) provides:

**Involuntary Dismissal: Effect Thereof.** For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.

*See also* Local Rule 15.1(c) (a court may dismiss an action for want of prosecution for "any ... failure to prosecute a civil action with reasonable promptness").

Rule 41(b) is a "housekeeping measure" which allows the Court to manage its docket, further the policy of expeditious resolution of litigation, and prevent prejudice to a defendant from delay. *Nealey v. Transportacion Maritima Mexicana. S.A.,* 662 F.2d 1275, 1279 (9th Cir.1980). There is, however, a countervailing policy which favors disposition of cases on their merits. *Id.* In considering whether to grant a motion to dismiss for failure to prosecute, then, the Court must consider fairness to the litigants as well as the policy concerns with efficient disposition and resolution of litigation.

■ The legal standard designed to balance these differing interests looks to whether there is a "clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir.1985) (citations omitted). The two components the Court must examine, then, are delay and prejudice to the defendant. *See Nealey,* 662 F.2d at 1280. Moreover, the Court must view both components together. *Id.* "A weak excuse [by the plaintiff] may suffice if there has been no prejudice; an exceedingly good one might still do even when there has been some." *Id.* (quoting *Larios v. Victory Carriers, Inc.,* 316 F.2d 63, 67 (2d Cir.1963)). It follows, and the Court emphasizes, that there is no brightline time of delay which automatically warrants a dismissal. *See id.* As a guide, however, common sense dictates that the longer the delay, the more likely the prejudice. *Id.*

■ In the present case, the Court finds that there is a record of clear delay, without excusable neglect, and that lesser sanctions would not remedy the potential prejudice to the moving Defendants. Although a remedy of last resort, *Goforth,* 766 F.2d at 1535, dismissal with prejudice is proper in the present case. Federal Rule of Civil Procedure 41(b). *See also Goforth,* 766 F.2d at 1535.

The Defendant must initially come forth with some evidence of delay. *Nealey,* 662 F.2d at 1280. This is rarely a difficult initial burden, *id.,* and is evident in the present case by virtue of the three year span of inactivity by Stolt–Nielsen, from March 1991 to March 1994. The burden is then on the plaintiff to excuse the delay and to show the lack of prejudice to the defendant. *Id.* Stolt–Nielsen cannot meet this burden.

■■ The primary explanations advanced by Stolt–Nielsen for the three year lag of activity are: (1) that the Clerk's Office inadvertently treated the entire action as dismissed in March 1991, when the subject inaction began; (2) that Stolt–Nielsen and its counsel were resolving differences between themselves about the proper measure of recovery; and (3) that Stolt–Nielsen assumed that liability was established, with the only remaining issue being the extent of damages, thereby reducing the need for extensive discovery. None of these explanations show excusable neglect.

It is true that the Clerk's Office erred in treating the entire action as dismissed in March 1991. There is no causal relationship, however, between that error and Stolt–Nielsen's inaction. Stolt–Nielsen was under the impression that the action was still pending except as to Resolve Maritime. Any prejudice from the error would fall not on Stolt–Nielsen, but rather, on the remaining Defendants, as these parties were under the false impression that the entire action had been dismissed. Moreover, even if Stolt–Nielsen was under the impression that the entire action had been dismissed, no explanation can be given as to why it did nothing to correct the error until March 1994.

Stolt–Nielsen also attempts to establish excusable neglect by explaining that, during the lag, Stolt–Nielsen and its counsel were resolving differences as to the proper measure of recoverable damages. While this effort may be appropriate *between Stolt–Nielsen and its counsel,* it fails to explain why there was a three year period of inaction *toward the remaining Defendants.*

■ Finally, Stolt–Nielsen states that it assumed that liability had been established, with the remaining issue being the extent of damages, thereby reducing the need for extensive discovery. This assumption, however, was unwarranted and without basis. A cursory examination of the pleadings establishes that the remaining Defendants were contesting liability.

Having determined the absence of excusable neglect, the inquiry turns to prejudice to the remaining Defendants. The remaining Defendants contend that they are severely prejudiced by the delay due to the death of Captain Browne, who was, as the captain of the Zim Montreal on the subject date, apparently the most important witness on the issue of liability. The Court agrees. Moreover, this hinderance to the remaining Defendants in preparing a defense warrants a dismissal with prejudice.

*CONCLUSION*

For the reasons discussed above, the Motion to Dismiss for Failure to Prosecute is hereby **GRANTED.** The Clerk of Court is directed to enter an appropriate judgment in favor of Defendants, Zim Israel and Zim Montreal.

**SO ORDERED.**